UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANDREA MOREY,

                      Plaintiff,

v.                                          **DECISION AND ORDER**
                                                       17-CV-968S

WINDSONG RADIOLOGY GROUP, P.C.,
KAREN BLATTO,

                    Defendants.

## I. INTRODUCTION

Plaintiff Andrea Morey filed this action against Windsong Radiology Group, P.C. ("WRG") and Karen Blatto (collectively, "Defendants") alleging violations under the Americans with Disability Act of 1990 ("ADA"), 42 U.S.C. § 12201 et seq., and the New York State Human Rights Law, Executive Law § 296 et seq. Plaintiff alleges that she suffers a disability due to her height, that Defendants failed to provide a reasonable accommodation for her alleged disability, and that she was terminated because of her request for a reasonable accommodation.

Presently before this Court is Defendants' motion to dismiss Morey's complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 6). With briefing fully completed and oral argument deemed unnecessary, the Court will grant Defendants' motion.

## II. BACKGROUND

The facts alleged in the complaint are assumed to be true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual

allegations contained in the complaint." (internal quotation marks omitted)).

In her Complaint, Morey alleges that she is four feet five inches tall (4'5"), "well outside of the normal range of height for adults" in the United States and in the Western District of New York. (Complaint, Docket No. 1, ¶ 9). She further alleges that her "height is a physiological, musculoskeletal condition which substantially limits one or more of her major life activities." (Id. ¶ 10). Plaintiff began her employment with WRG in January of 2003 at its West Seneca location. (Id. ¶ 12). Her supervisor was Karen Blatto. (Id. ¶ 14). After a brief leave of absence for unrelated medical purposes, Morey returned to work at WRG's Williamsville location around August of 2014. (Id. ¶ 21). There, she began working on fluoroscope exams, and continued to do so at that location on a regular basis. (Id. ¶¶ 20, 23). Morey's height required her to use a step-stool affixed to a platform, which Defendants provided for her. (Id. ¶ 24). Morey did not ask "for any other accommodation." (Id. ¶ 25). But she was still "not physically able to see the controls of the machine over the handle." (Id. ¶ 26).

Her inability to see the controls was never a problem, until Morey began working on hysterosalpingogram exams for women with fertility issues at WRG's Williamsville location. (Id. ¶ 27). At some point "in or around January or February 2015," Morey asked WRG for "a reasonable accommodation of assistance in operating the fluoroscope because of her height limitations." (Id. ¶ 30). Morey "was told to perform the exams of which she was capable and leave the [hysterosalpingogram] exams to the other technicians," an instruction with which Morey complied. (Id. ¶¶ 33, 35). Shortly thereafter, Morey "started to receive negative job action in the form of abuse and bullying by the other technicians at [WGR]." (Id. ¶ 36). "Among other things, [Morey] was told

that she needed to 'invest in some stilts and longer scrubs' so that she would be able to do her work." (Id. ¶ 37). Morey spoke to Blatto about these comments "numerous times" and "was eventually pulled into a meeting during which [Morey] was blamed for the bullying." (Id. ¶ 38). In April of 2015, Morey received a notice of termination, and in it, was "accused" "of refusing to perform the [hysterosalpingogram] exams and of not being a 'team player.'" (Id. ¶ 39).

After filing a charge with the EEOC on June 8, 2015, Morey instituted this action on September 28, 2017, by filing a complaint in the United States District Court for the Western District of New York. (Docket No. 1). Defendants filed the instant motion to dismiss on December 5, 2017. (Docket No. 6). Morey responded in opposition on January 19, 2018. (Docket No. 13). Defendants filed a reply on February 2, 2018. (Docket No. 16).

### III. DISCUSSION

#### A. Rule 12 (b)(6) Standard

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557.

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d

3

868 (2009). Legal conclusions, however, are not afforded the same presumption of truthfulness. Id. (the tenet that a court must accept as true all factual allegations contained in a complaint is inapplicable to legal conclusions).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Twombly, 550 U.S. at 556; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Id. at 570.

## B. Analysis

### 1. Statute of Limitations

At the outset, the Court notes that all of Morey's claims fall within the applicable statute of limitations. See 42 U.S.C. § 12117(a). Morey filed her charge with the EEOC on June 8, 2015, rendering actionable any allegations occurring after August 12, 2014. See Zerilli–Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (affirming dismissal of plaintiff's ADA claim as time-barred for failure to file EEOC complaint within 300–day limitations period). The discriminatory actions that Morey alleges to have taken place occurred, at earliest, in January of 2015. (Compl. ¶ 29). Consequently, and

notwithstanding Defendants' assertion to the contrary (Docket No. 6-11 at 5), none of Morey's claims are time barred.

**2. ADA Claim**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of his employment."  42 U.S.C. § 12112(a).

"Discrimination in violation of the ADA includes, *inter alia,* 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'"  McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)).  Moreover, a "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); see McBride, 583 F.3d at 96. Accordingly, to plead a *prima facie* claim of discrimination based on a disability, a Plaintiff must plausibly allege the following elements:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

McMillan v. City of New York, 711 F.3d 120, 125–26 (2d Cir. 2013) (citing McBride, 583 F.3d at 97).  "Once a plaintiff has established a prima facie case, the burden shifts to the

defendant to show '(1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue.'" Anderson v. Nat'l Grid, PLC, 93 F. Supp. 3d 120, 131 (E.D.N.Y. 2015) (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)).

Defendants move to dismiss Morey's ADA claim on the ground that Morey has failed to allege that she suffers from, or is regarded as suffering from, a disability. (Defs. Br., Docket No. 6-11 at 6-10). Plaintiff, in turn, responds that her "height is a physiological, musculoskeletal condition" which qualifies as a disability that "substantially limits one or more of her major life activities," which she similarly pleads in her Complaint. (Compl. ¶¶ 10, 41-42; Pl. Resp., Docket No. 15-5 at 3). Resolution of this issue requires a brief examination of the language of the statute and regulations, as well as the legislative history of the ADA.

The ADA defines a "disability" as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). In determining whether a plaintiff has a disability that is protected by the ADA, courts "consider: (1) 'whether the plaintiff suffered from a physical or mental impairment,' (2) whether the life activity upon which the plaintiff relied constitutes a major life activity under the ADA,' and (3) whether 'the plaintiff's impairment substantially limited the major life activity identified.'" Jacques v. DiMarzio, Inc., 386 F.3d 192, 201 (2d Cir.

2004) (quoting <u>Colwell v. Suffolk County Police Dep't</u>, 158 F.3d 635, 646 (2d Cir. 1998)) (alterations omitted).

In <u>Toyota Motor Manufacturing, Kentucky, Inc. v. Williams</u>, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." 534 U.S. 184, 198, 122 S. Ct. 681, 151 L.Ed.2d 615 (2002). The Supreme Court also held that "the impairment's impact must also be permanent or long term." <u>Id.</u> In 2008, finding that the Supreme Court's holding in <u>Toyota</u> "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress" and that "as a result . . . lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities," Pub. L. 110–325, § 2(a)(7), Sept. 25, 2008, 122 Stat. 3553, Congress amended the ADA effective January 1, 2009. <u>Id.</u> § 8. The purpose of the amendment was, among other things, "to reject the standards enunciated by the Supreme Court in [<u>Toyota</u>] . . . that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives' . . . ." <u>Id.</u> § 2(b)(5).

As amended, the statute provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The amended

7

statute further provides that "[t]he term 'substantially limits' shall be interpreted consistently with the findings" mentioned above. Id. § 12102(4)(B). Moreover, the ADAAA directs courts to construe the term disability "in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [ADA]." Id. § 12102(4)(A). Given that Congress clearly expressed its intent to overturn the Supreme Court's holding in Toyota that "the impairment's impact must also be permanent or long term," 534 U.S. at 198, Defendants' reliance on decisions prior to the 2008 amendments is misplaced.

Morey now has a relatively light burden. See 29 C.F.R. § 1630.2(j)(1)(iii) (noting that the substantial limitation prong "should not demand extensive analysis"). Post-ADAAA regulations require her to show only that the impairment "substantially limits"— but not necessarily "prevent[s], or significantly or severely restrict[s]"—the "ability . . . to perform" at least one "major life activity as compared to most people in the general population." Id. §§ 1630.2(j)(1)(ii), 1630.2(j)(1)(viii). Relatively few cases in this Circuit have applied the ADAAA and its regulations to claims based upon conduct occurring after the statute became effective in 2009. See Ragusa v. Malverne Union Free Sch. Dist., 381 F. App'x 85, 87 n.2 (2d Cir. 2010) (summary order) (noting that federal courts must apply "the version of [ADA] in effect during the time period at issue"). Notwithstanding the recent amendments to the ADA that altered the definition of "major life activities" and "substantially limits," the EEOC maintains its position that "[t]he definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within

8

'normal' range and are not the result of a physiological disorder." 29 C.F.R. § Pt. 1630, App; Sacks v. Gandhi Eng'g Inc., No. 11 CIV. 5778 DAB DF, 2013 WL 8282955, at *12 (S.D.N.Y. Aug. 23, 2013).

Still, even under the new ADA regime, the Court finds that Morey fails as a matter of law to plausibly allege that she suffers from an actual disability under the ADA. The extent to which Morey alleges an actual disability in her Complaint is as follows: her "height" is "well outside of the normal range for adults"; is of a physiological, musculoskeletal condition which substantially limits one or more of her major life activities"; and that she "suffers from a disability within the meaning of the ADA" which "substantially limits [her] major life activities." (Compl. ¶¶ 9-10, 41-42). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" "to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555, 570).

Notably, nowhere in her Complaint does Morey identify which "major life activity" is limited by her alleged disability. To the extent Morey means to allege that her height limits her ability to work, that allegation also fails as a matter of law. In determining whether a person is substantially limited in the major life activity of working, a plaintiff must show that she is "substantially limited in [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Anderson, 93 F. Supp. at 137; see also Stevens v. Rite Aid Corp., No. 13 CV 783, 2015 WL 5602949, at *7-8 (N.D.N.Y. Sept. 23, 2015), aff'd in part, rev'd in part on other grounds, 851 F.3d 224, 231 (2d Cir. 2017)

9

(discussing the relevant post-ADAAA standard and holding that the test for determining whether a person's ability to work was substantially impaired by their condition has not changed).

Morey's Complaint does not allege that she cannot "perform either a class of jobs or a broad range of jobs in various classes," Anderson, 93 F. Supp. 3d at 137; rather, she alleges only that she could not "see or reach the controls or maneuver the equipment safely" when "operating [a] fluoroscope" when performing one particular type of exam, at one particular location of her employer—hysterosalpingogram exams, for women with fertility issues, at WRG's Williamsville location. (Compl. ¶¶ 24, 26-27, 30-31). Cf. Krachenfels v. N. Shore Long Island Jewish Health Sys., No. 13-CV-243 (JFB), 2014 WL 3867560, at *14 (E.D.N.Y. July 29, 2014) (noting that, when the major life activity is work, the employee must be substantially limited from performing "a class of jobs or a broad range of jobs");1 see also Telemaque v. Marriott Int'l, Inc., No. 14 CIV. 6336 (ER),

---

1 The EEOC regulations used to provide explicitly that a substantial impairment in the major life activity of working meant that the individual was "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs,' and that '[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" Cameron v. Community Aid for Retarded Children, Inc., 335 F.3d 60, 65-66 (2d Cir. 2003) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). However, the EEOC "has removed from the text of the regulations a discussion of the major life activity of working" because "no other major life activity receives special attention in the regulation," and "in light of the expanded definition of disability established by the [ADAAA], this major life activity will be used in only very targeted situations." Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("EEOC Interpretive Guidance"). Nonetheless, the EEOC Interpretive Guidance, which the Second Circuit has treated as authoritative, see, e.g., Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 99 (2d Cir. 1999), states that "[i]n the rare cases where an individual has a need to demonstrate that an impairment substantially limits him or her in working, the individual can do so by showing that the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." EEOC Interpretive Guidance. Moreover, "[d]emonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." Id. Accordingly, the test for determining whether a person's ability to work was substantially impaired has not changed.

2016 WL 406384, at *7 (S.D.N.Y. Feb. 2, 2016) ("Plaintiff alleges that his arthritis imposes one work-related limitation, namely that he 'cannot run or move fast throughout the hotel when responding to a non-emergency call.' Compl. ¶ 22. This single allegation, however, does not support a plausible inference of a <u>substantial</u> work limitation, as it affects at most one function of one particular job.") (emphasis in original). Accordingly, Morey fails to meet her burden of plausibly making a *prima facie* showing of a substantially limiting impairment.

Even liberally construing Plaintiff's Complaint as alleging that Defendants regarded her as having an impairment, 42 U.S.C. § 12102(1)(C), which the Court is not required to do given that Morey is represented by counsel, <u>Harris v. Miller</u>, 818 F.3d 49, 56 (2d Cir. 2016) (requiring courts to "liberally construe" *pro se* submissions "to raise the strongest arguments they suggest") (internal citation and quotation marks omitted), the Complaint falls short of plausibly alleging a cause of action under that provision of the ADA as well. Prior to the ADAAA, the Supreme Court had held that plaintiffs pursuing a "regarded as" theory did need to show that their perceived disability limited a major life activity. <u>See</u> <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 489-91, 119 S. Ct. 2139, 144 L.Ed.2d 450 (1999), <u>superseded by statute</u>, 42 U.S.C. § 12102(3)(A) (2008).

The ADAAA overturned this holding. Now:

> An individual meets the requirements of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment <u>whether or not</u> the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(1)(C) (2008) (emphasis added).  The Committee Report for the new section confirmed the intent of the new language:

> [The Supreme Court's] restrictive rulings [including <u>Sutton</u>] conflict with the Court's earlier recognition . . . that the negative reactions of others are just as disabling as the actual impact of an impairment, a conclusion endorsed by Congress when it adopted the "regarded as" prong.
>
> The Committee therefore restores Congress's original intent by making clear that an individual meets the requirement of "being regarded as having such an impairment" if the individual shows that an action (e.g. disqualification from a job, program, or service) was taken because of an actual or perceived impairment, <u>whether or not</u> that impairment actually limits or is believed to limit a major life activity.

H.R. Rep. No. 110-730, pt. 1, at 14 (2008) (emphasis added).

The Second Circuit has addressed this new statutory language in only one published case, <u>Hilton v. Wright</u>, 673 F.3d 120, 129 (2d Cir. 2012), where it held that the plaintiff "was not required to present evidence of how or to what degree [the defendants] believe the impairment affected him." 673 F.3d at 129.  Instead, the plaintiff "was only required to raise a genuine issue of material fact about whether [defendants] regarded him as having a mental or physical impairment."  <u>Id.</u>  "Although <u>Hilton</u> dealt with a motion for summary judgment, and this case is only at the pleading stage, the analysis of law is the same. The only difference is that plaintiffs are only required to allege, rather than prove, that defendants regarded them as disabled."  <u>Lawton v. Success Acad. Charter Sch., Inc.</u>, 323 F. Supp. 3d 353, 365 (E.D.N.Y. 2018).

Morey has not done so.  The Complaint contains no allegations that Defendants regarded Morey as having an impairment.  The sole factual allegation in the Complaint from which any such inference could be drawn is that Morey "was told that she needed

12

to 'invest in some stilts and longer scrubs' so that she would be able to do her work." (Compl. ¶ 37). This sole factual allegation that her coworkers allegedly made falls short of plausibly alleging that Defendants (i.e., her employers) regarded Morey as having an impairment. "The question of whether a plaintiff is 'regarded as' having a disability turns on the perception of the employer." Stolpner v. New York Univ. Lutheran Med. Ctr., No. 16-CV-997(KAM), 2018 WL 4697279, at *22 (E.D.N.Y. Sept. 29, 2018) (quoting Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997)); see also Lawton, 323 F. Supp. 3d at 365 (finding that Plaintiff plausibly alleged "defendants regarded them as disabled" by alleging "that defendants regarded them as having a 'learning and/or behavioral disability'") (quoting the complaint). Here, Morey fails to allege that that WRG or Karen Blatto, the named Defendants in this action, regarded her as having an impairment; rather, the Complaint attributes the above comments to "other technicians at [WRG]." (Compl. ¶¶ 36-37). Cf. Stolpner, 2018 WL 4697279, at *22 ("'[T]he plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statutes and that the employer discriminated against the plaintiff on that basis.'") (quoting Francis, 129 F.3d at 283) (emphasis added); Kelly v. Kingston City Sch. Dist., Inc., No. 116CV00764MADDJS, 2017 WL 976943, at *5 (N.D.N.Y. Mar. 13, 2017) ("Although Plaintiff claims that he is regarded as having a disability within the community, the complaint and proposed amended complaint fail to plausibly allege that Defendant had any such knowledge or perceived Plaintiff as having a disability."); Rodriguez v. Verizon Telecom, No. 13-CV-6969 PKC DCF, 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) ("Here, plaintiff alleges

that his manager falsely concluded that he was under the influence based on the manager's perception that plaintiff has a history with addiction. This allegation plausibly establishes that defendant regarded plaintiff as having a mental or physical impairment.").

Because Morey fails to allege facts from which it is plausible to infer that she possesses a physical or mental impairment that substantially limits her in one or more major life activity, or that she was regarded by her employer as having such an impairment, Defendants' motion to dismiss the ADA claim is GRANTED.

### 3. Retaliation

Even assuming Morey adequately alleged that she suffered from a disability within the meaning of the ADA, she has failed to plausibly allege a claim for retaliation under the ADA. "In order to establish a prima facie case of retaliation, [Morey] must show that: (1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Morey's claim of retaliation is inadequate for two reasons.

First, Morey has failed to plausibly allege that she was engaged in protected activity under the ADA. It is true that requests for reasonable accommodation constitute protected activity under the ADA. See, e.g., Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002) (requests for accommodation are protected activity); Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 439 (E.D.N.Y. 2015) ("[M]aking requests for reasonable accommodations for a disability is a protected activity

within the contemplation of the statue.") (internal citation, quotation marks, and alterations omitted). Morey's Complaint, however, alleges that she "requested a reasonable accommodation" in the form of asking for "assistance in operating the fluoroscope." (Compl. ¶ 30). In other words, Morey's "reasonable accommodation request" "merely asked for 'help' in completing [a] task[]. [Morey] has offered no further identification of an accommodation that was then available and not provided to her." Snowden v. Trustees of Columbia Univ., No. 12 CIV. 3095 GBD, 2014 WL 1274514, at *5 (S.D.N.Y. Mar. 26, 2014), aff'd, 612 F. App'x 7 (2d Cir. 2015) (summary order).

Indeed, Morey's Complaint specifically makes clear that Defendants had previously provided her with an accommodation: using a step-stool affixed to a platform so that she could use the fluoroscope machine, which she "never complained about" "nor did she ask for <u>any other accommodation</u>." (Compl. ¶¶ 24-25) (emphasis added). Accordingly, Morey's suggestion that requesting assistance from another coworker to help her operate the fluoroscope at the Williamsville location while performing exams for women with fertility issues was a request for a reasonable accommodation cannot, as a matter of law, be true. See Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991) ("The suggestion that coworkers might perform this part of [plaintiff's] job . . . likewise sought the elimination, for [plaintiff], of essential functions of the job."); Shannon v. NYC Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003) ("A reasonable accommodation can never involve the elimination of an essential function of a job.").

Second, even assuming Morey requested a reasonable accommodation, the Complaint does not plausibly allege that she suffered any such adverse action "because

15

of" that request. To satisfy that standard, the complaint "must allege facts leading to the plausible inference that retaliation was a 'but-for' cause of the employer's adverse action." Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 990 (S.D.N. Y. 2017) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015)). A complaint may raise such an inference by alleging either direct evidence of retaliatory animus, such as statements from supervisors, or indirect evidence, such as a "very close" temporal link between the protected activity and the adverse action. Giles v. NBC Universal, Inc., No. 10-cv-7461 (DAB), 2011 WL 4376469, at *4 (S.D.N.Y. Sept. 20, 2011).

Plaintiff's Complaint fails to allege direct evidence of retaliatory animus. But her Complaint does allege that she was terminated in April of 2015, which is around three to four months after she allegedly requested a reasonable accommodation ("around January or February 2015," according to her Complaint). (Compl. ¶¶ 29, 39). "To the extent she relies on the temporal proximity between these two events as circumstantial evidence of causation, that, standing alone, is insufficient." Dixon v. Int'l Fed'n of Accountants, 416 F. App'x 107, 111 (2d Cir. 2011) (summary order) (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001) (noting that the two events must be "very close," and that a proximity of three months or more is insufficient)). Although there is no bright-line rule for what amount of time makes a link "very close," courts in the Second Circuit generally hold that "the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d

257, 275 (S.D.N.Y. 2007); see also McManamon v. Shinseki, No. 11 CIV. 7610 PAE, 2013 WL 3466863, at *12 (S.D.N.Y. July 10, 2013) (finding temporal gap of three-and-a-half months insufficient at motion-to-dismiss stage); Nadel v. Shinseki, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2014) (same); McDowell v. N. Shore-Long Island Jewish Health Sys., 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) ("[P]ursuant to the Second Circuit's authority, the Court finds that [a] greater than three month gap, unsupported by any other allegations showing plausible retaliation, is insufficient to raise an inference of retaliation [and thereby defeat a Rule 12(b)(6) motion to dismiss]"). Accordingly, Morey has failed to state a claim for retaliation.

### 4. State Law Claim

Finally, Morey's Complaint also alleged violations of New York State Executive Law § 296 et seq. "Having determined that the federal claims against defendants do not survive" the motion to dismiss, "the Court concludes that retaining jurisdiction over any state law claims is unwarranted." Anderson, 93 F. Supp. 3d at 147 (citing 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966)). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" Birch v. Pioneer Credit Recovery, Inc., No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986)).

In the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental

jurisdiction'" over Morey's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive the motion to dismiss.

## IV. CONCLUSION

Based on the foregoing, this Court finds that Plaintiff has failed to state claims for discrimination and retaliation under the ADA, and declines to exercise supplemental jurisdiction over Plaintiff's claim arising under New York law.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 6) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: January 18, 2019
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge